**SVG LITHOGRAPHY SYSTEMS, INC., Plaintiff,**

v.

**ULTRATECH STEPPER, INC., Defendant.**

**No. C.A. 01–11766–MLW.**

United States District Court, D. Massachusetts.

March 6, 2004.

---

Blair M. Jacobs, Pillsbury Winthop LLP, McLean, VA, Eileen M. Herlihy, Palmer & Dodge, LLP, Boston, MA, Kevin T. Kramer, Pillsbury Winthrop LLP, McLean, VA, Marc J. Goldstein, Palmer & Dodge, LLP, Boston, MA, Robert Perez, Pillsbury Winthrop LLP, Thomas P. Feddo, Pillsbury Winthrop LLP, McLean, VA, for SVC Lithography Systems, Inc., Plaintiff.

Claire Laporte, Foley Hoag LLP, Boston, MA, Henry C. Bunsow, Keker & Van Nest, LLP, San Francisco, CA, Katherine M. Hamill, Foley Hoag LLP, Boston, MA, Lloyd Farnham, Keker & Van Nest, San Francisco, CA, Martha Mazzone, Foley Hoag LLP, Boston, MA, for Ultratech Stepper, I, Defendant.

### MEMORANDUM AND ORDER

WOLF, District Judge.

## I. INTRODUCTION

This is a patent infringement case that began in 2001 as a rather complex matter involving six patents containing 110 claims. Since its inception, the case has become considerably more manageable, and presently involves only three claims of a single patent. After the parties have completed their briefing for the *Markman* hearing the court had scheduled for August 13, 2003, plaintiff SVG Lithography Systems, Inc. ("SVGL") seeks to withdraw its complaint for infringement and end the case. However, defendant Ultratech Stepper, Inc. ("Ultratech"), which has filed counterclaims seeking declaratory judgments of non-infringement and invalidity, wants to continue pressing its claims and asks the court to conduct the *Markman* hearing.

For the reasons described below, the court concludes that it is appropriate to dismiss the plaintiff's complaint with prejudice and, as there is now no Article III case or controversy underlying the defendant's declaratory judgment counterclaims, dismiss the counterclaims for lack of subject matter jurisdiction.

## II. PROCEDURAL HISTORY

Plaintiff SVG Lithography Systems, Inc. filed suit against defendant Ultratech Stepper, Inc. on October 12, 2001, alleging infringement of six United States patents. Ultratech filed an answer denying infringement and counterclaims seeking declaratory judgments of non-infringement and invalidity. After an initial skirmish over venue, the parties settled into discovery.

On February 12, 2003, the parties filed a stipulation of partial dismissal that disposed of all claims and counterclaims as they related to all but one of the patents-in-suit. Thus, the only remaining issues in this case are whether Ultratech has infringed claims 1–3 of U.S. Patent No. 4,726,671 ("the '671 patent") and whether these claims are valid.[1] The '671 patent claims a mirror mount that is used to stabilize a mirror used in photolithography. Photolithography is a process that is useful for, among other things, manufacturing semiconductor products. According to SVGL, Ultratech's 5th Generation Mirror Mount, a component of one or more of Ultratech's steppers, infringes the '671 patent. A stepper is a machine used to manufacture semiconductor products. It projects a pattern of light onto a portion of a wafer coated with a light-sensitive chemical solution. The wafer is then moved, or "stepped", so that light can be projected onto a new portion of the wafer. The mirror mount holds a mirror in place so that light is guided from its source to the wafer. The stepper, rather than the mirror mount alone, is the product that Ultratech sells to its customers.

In accordance with the schedule set by the Magistrate Judge, the parties submitted briefs on the disputed claim terms in the '671 patent. The court conducted a telephone conference with the parties to schedule a *Markman* hearing. At that conference, the court ordered the parties to submit supplemental briefs regarding their proposed claim constructions by May 23, 2003. On May 23, 2003, the defendant submitted its supplemental brief. The plaintiff did not. Instead, the plaintiff filed a motion seeking to withdraw its complaint with prejudice as to past sales of the 5th Generation Mirror Mount and dismiss Ultratech's counterclaims without prejudice. On June 13, 2003, Ultratech filed an opposition to SVGL's motion. SVGL filed a reply on June 19, 2003.

## III. ANALYSIS

SVGL argues that it is entitled to dismissal for two reasons. First, SVGL seeks dismissal under Federal Rule of Civil Procedure 41(a)(2), which provides for dismissal "upon order of the court and upon such terms and conditions as the court deems proper." Second, SVGL argues that, as it is willing to waive any rights it has to damages for past infringement of the '671 patent and Ultratech does not presently infringe the '671 patent, there is no longer a case or controversy for this court to adjudicate. SVGL asserts that this case is materially indistinguishable from *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed.Cir.1995).

The Federal Circuit revisited *Super Sack* in *Intellectual Property Development, Inc. v. TCI Cablevision*, 248 F.3d 1333 (Fed.Cir.2001) and described it as follows:

> In *Super Sack*, Super Sack sued Chase for allegedly infringing two of its patents. 57 F.3d at 1055, 35 USPQ2d at 1140. Chase denied infringement and filed a counterclaim seeking declaratory

---

1. Apparently, SVGL does not claim infringement of claim 4 of the '671 patent.

judgment on the issues of noninfringement and invalidity. Subsequently, in a motion to dismiss, Super Sack's counsel provided a statement indicating that "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056, 57 F.3d 1054, 35 USPQ2d at 1141. In *Super Sack*, this court first determined that the promise not to sue extended only to products that Chase made, used, or sold on or before July 8, 1994–the date that Super Sack filed its motion to dismiss. *Id.* at 1056–57, 57 F.3d 1054, 35 USPQ2d at 1141.

The *Super Sack* court then recognized that in suits for declarations of patent rights, a two-part justiciability test applies:

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Id.* at 1058, 57 F.3d 1054, 35 USPQ2d at 1142 (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978, 28 USPQ2d 1124, 1126 (Fed.Cir.1993)).

The *Super Sack* court stated with respect to the patents at issue in the statement of non-liability, "Super Sack is forever estopped by its counsel's statement of non-liability . . . from asserting liability against Chase in connection with any products that Chase made, sold, or used on or before July 8, 1994." *Id.* at 1059, 57 F.3d 1054, 35 USPQ2d at 1143. It continued, providing: "This estoppel, in turn, removes from the field any controversy sufficiently actual to confer juris-

diction over this case." *Id.* Consequently, the court determined, "[b]ecause Chase can have no reasonable apprehension that it will face an infringement suit on [the patents at issue] with respect to past and present products, it fails to satisfy the first part of our two-part test of justiciability." *Id.*

The *Super Sack* court then addressed Chase's assertion that Super Sack's promise failed to cover products Chase could make, use, or sell in the future. *Id.* at 1059–60, 35 USPQ2d at 1143–44. The court pointed out that the second part of the declaratory justiciability test for patent rights requires that the putative infringer's "present activity" place it at risk of infringement liability. *Id.* at 1059, 35 USPQ2d at 1143. Because Chase's present activity failed to place it at risk of infringement liability, the court determined that "[t]he residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim of invalidity." *Id.* at 1060, 35 USPQ2d at 1144. Therefore, the *Super Sack* court affirmed the district court's grant of Super Sack's motion to dismiss for lack of jurisdiction with prejudice. *Id.*

*Id.* at 1340–41.

Ultratech responds to SVGL's motion by attempting to distinguish *Super Sack.* First, Ultratech claims that SVGL is entirely incorrect when it states that "Ultratech . . . has represented that it currently has no intention of [offering the accused 5th Generation Mirror Mount for sale] in the future." *Compare* Pl.'s Mem. at 6 *with* Def.'s Opp. at 3. Rather, Ultratech maintains that it "may well use the 5th generation mirror mount" before the '671 patent expires in 2006. Def.'s Opp. at 3. Thus, Ultratech argues that there is a present controversy over whether the 5th Genera-

tion Mirror Mount infringes the '671 patent. Second, Ultratech argues that SVG "refuses to enter into a covenant not to sue Ultratech on the '671 patent—indeed it has all but promised that it will sue Ultratech again for infringement of the '671 patent if Ultratech uses the very product at issue in this case again." Def.'s Opp. at 4. This, according to Ultratech, is the "irreconcilable difference between *Super Sack* and *this case.*" Def.'s Opp. at 6 (emphasis in original). Ultratech maintains that:

> The "product" at issue here is the mirror mount, not a new model of stepper into which that mount will be incorporated. It is undisputed that the mount at issue was made, used, and sold well before SVGL filed its motion to dismiss, yet SVGL has refused to agree that it will refrain from filing another lawsuit against Ultratech based on the very same technology on which it sued before . . . . . Ultratech's current desire for unrestricted use of that product, and its plans to pair it with a new lens, evidence "concrete steps" to resume the use of the very same mirror-mount at issue in this case.

Def.'s Opp. at 6–7. Ultratech argues that if the reasoning of *Super Sack* is extended to cover this case, the purposes of the Declaratory Judgment Act would be frustrated as it would be forced to make business decisions under the threat of a future suit over its 5th Generation Mirror Mount technology and SVGL would be given "a second bite at the apple." *Id.* at 4–5, 7.

■ Ultratech's arguments are not persuasive. This case is materially indistinguishable from *Super Sack* and *Intellectual Property Development.* No "Ultratech product presently offered for sale contains a 5th generation mirror mount." Def.'s Resp. to Pl.'s First Set of Requests for Admission No. 6. The fact that Ultratech "may" in the future wish to incorporate its

5th Generation Mirror Mount into new products and sell them is not sufficient to satisfy the present infringing activity requirement for subject matter jurisdiction. The "current desire" and amorphous "plans" to use the 5th Generation Mirror Mount in future steppers that Ultratech avers on page 7 of its Opposition are unsupported by affidavits and, in any event, are not sufficiently concrete steps to support an Article III case or controversy.

The fact that Ultratech once sold the 5th Generation Mirror Mount is insufficient to distinguish this case from *Super Sack.* In *Super Sack,* the plaintiff's promise not to sue did "not cover products that [the defendant] Chase may make, sell, or use in the future." *Super Sack,* 57 F.3d at 1059. Although Ultratech is closer to establishing an actual controversy than Chase was because it has identified a product component that SVGL claims infringes the '671 patent, it has still failed to establish that it actually intends to make, use or sell products containing that component in the future. Although *Super Sack* could be read to require a plaintiff to waive any future claim of infringement for any product that exists at the time of the motion to dismiss in order to strip the court of subject matter jurisdiction, such a broad requirement is not justified in a case where an existing product is not currently being made, used, offered for sale or sold and there are no concrete plans to recommence activities that could constitute infringement in the future.

Thus, the court concludes that there is no case or controversy concerning whether any of Ultratech's future acts will infringe the '671 patent. Ultratech does not seem to dispute that there is no case or controversy regarding allegedly infringing acts that took place before May 23, 2003, the date on which SVGL filed its motion to dismiss. As was the case in *Super Sack,*

Ultratech cannot have a reasonable apprehension of suit for these past acts given SVGL's unconditional promise not to sue.

In reaching this conclusion, the court notes that SVGL's promise not to sue covered only "past sales of products incorporating the accused 5th Generation Mirror Mount." Pl.'s Mem. at 6. However, patent infringement can result not only from selling a patented invention, but also from making, using or offering to sell that invention. *See* 35 U.S.C. § 271. Additionally, SVGL alleged contributory infringement and active inducement of infringement in its Complaint. In light of SVGL's representation that this case is governed by *Super Sack*, the court assumes that SVGL's failure to include the other types of infringing activity in its promise not to sue was an oversight and that SVGL waives any right to damages for infringing acts of any sort that took place before May 23, 2003. If this assumption is incorrect, SVGL shall notify the court by March 20, 2004. The court will stay implementation of this Order pending clarification by SVGL.

■ "Finally, even if there [were] an *actual controversy* and thus *jurisdiction*, the exercise of that jurisdiction rests within the sound discretion of the district court." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed.Cir.1998). In the circumstances, even if Ultratech's plans and desires constituted "concrete steps" so as to create an Article III case or controversy over the scope and validity of the '671 patent, the court might not choose to exercise its jurisdiction over Ultratech's declaratory judgment claims absent a showing that the uncertainty of litigation was preventing Ultratech from making particular business decisions.

■ Ultratech next argues that if dismissal of the plaintiff's claims would strip the court of jurisdiction over its counter-claims for declaratory judgment, then the plain text of Rule 41(a)(2) precludes dismissal. The Rule provides, in pertinent part, that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."

Ultratech is correct that the court may not dismiss SVGL's claims under Rule 41(a)(2). In both *Super Sack* and *Intellectual Property Development*, the Federal Circuit affirmed the district court decisions based on the lack of subject matter jurisdiction based on the plaintiffs' statements of non-liability rather than on dismissal pursuant to Rule 41(a)(2). *See Super Sack*, 57 F.3d at 1057 n. 2; *Intellectual Property Development*, 248 F.3d at 1340 & n. 6. Thus, this court bases it dismissal of the plaintiff's claims and defendant's counterclaims on SVGL's promise not to sue rather than Rule 41(a)(2).

Finally, Ultratech argues that this court should not dismiss the claims and counterclaims in this case because Ultratech seeks an award of attorneys' fees under 35 U.S.C. § 285 and SVGL should not be able to avoid this liability by dismissing its claims. The Federal Circuit "and other[ court]s have established that there cannot be an award of attorneys' fees unless the court has jurisdiction of the action." *Hudson v. Principi*, 260 F.3d 1357, 1363 (Fed.Cir.2001). It is possible that the Federal Circuit would recognize an exception to the general rule that subject matter jurisdiction is a prerequisite for attorneys' fees in a case where the party against whom fees are sought destroyed subject matter jurisdiction that once existed. Additionally, Ultratech may be able to seek sanctions under Rule 11 or the inherent

power of the court despite the lack of subject matter jurisdiction over the merits of this case. *See Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 194 F.3d 323, 333 (2d Cir.1999) ("[E]ven when a district court lacks subject matter jurisdiction over an underlying action, it still possesses jurisdiction to impose sanctions arising from the underlying case."). In any event, the court's decision regarding whether it has subject matter jurisdiction cannot turn on the impact it may have on Ultratech's claim that this is an exceptional case justifying an award of attorneys' fees under § 285.

## IV. ORDER

Accordingly, it is hereby ORDERED that:

1. The parties' Joint Motion to File Under Seal (Docket No. 80) is ALLOWED.

2. Plaintiff SVG Lithography Systems, Inc.'s Motion to Withdraw Its Complaint and Dismiss Ultratech Stepper, Inc.'s Counterclaims (Docket No. 77) is ALLOWED. The plaintiff's Complaint is DISMISSED WITH PREJUDICE as it relates to U.S. Patent No. 4,726,671. The Counterclaims as they relate to U.S. Patent No. 4,726,671 are DISMISSED for lack of subject matter jurisdiction.

3. This Order is temporarily STAYED. SVGL shall, by March 20, 2004, notify the defendant and the court whether the scope of its promise not to sue includes all infringing acts that took place before May 23, 2003.